# DISTRICT OF COLUMBIA *v.* BLACKMAN.

APPEAL AND ERROR; BILLS OF EXCEPTIONS; MUNICIPAL CORPORATIONS; NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE; STREETS AND SIDEWALKS.

1. An appeal will not be dismissed where the trial judge to whom was submitted the bill of exceptions within the time prescribed by the rule failed to sign it until after the expiration of such time, but then signed it *nunc pro tunc.*

2. A pedestrian on a sidewalk who, stopping to note the progress of the construction of new houses, steps a little to one side, or backwards, and falls into an unguarded excavation occupying about one third of the width of the sidewalk and about 8 feet deep, made for the purpose of making sewer connections with the houses, is not, as a matter of law, guilty of such contributory negligence as will defeat his action against the municipality, the building contractors, and owners of the houses to recover damages for his injuries.

3. Where a pedestrian on a public sidewalk falls into an excavation in the sidewalk, made for the purpose of making sewer connections with houses in course of construction, both the owners of the houses and the contractor doing the work are liable for the resulting damages, if the excavation was unguarded, and the permit issued to the contractor, and of which the owner had notice, required that the excavation should be suitably guarded.

4. Where the municipality issued a permit to a building contractor to make an excavation in the sidewalk for the purpose of connecting houses in course of construction with a public sewer, it is chargeable with knowledge of the prosecution of the work, and the duty to supervise it; but where such excavation was fully completed about four hours before a pedestrian using the sidewalk fell into the hole, then unguarded, and was injured, and up to within a few minutes of that time a laborer who had assisted in digging the hole remained near it, the municipality cannot be said to have had constructive notice of the unguarded condition of the hole, and, in the absence of actual knowledge of its condition, is not liable to the party injured.

No. 1881. Submitted May 6, 1908. Decided Nov. 4, 1908.

HEARING on an appeal by three defendants from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries. *Affirmed as to two of the defendants and reversed as to the other.*

The facts are stated in the opinion.

*Mr. T. Percy Myers* for the appellants John W. and Samuel H. Bogley.

*Mr. E. H. Thomas,* Corporation Counsel, and *Mr. Henry P. Blair,* Assistant, for the appellant the District of Columbia.

*Mr. Wharton E. Lester* and *Mr. J. Clarence Price* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a judgment of the supreme court of the District on a verdict obtained by appellee, Thomas Blackman, against appellants, the District of Columbia, John W. Bogley, Samuel H. Bogley, and one Lockhead, for personal injuries sustained by falling into a hole in the sidewalk on T street in this city. The Bogleys, owners of the property in front of which the accident occurred, began the construction of two

houses, and applied to the District for, and were granted, a permit to make the excavation into which appellee fell. The application and permit follow:

This Application is Not a Permit.
No. 356.   Book 137.             Washington, April 12, 1907.

I hereby apply for permission to make the necessary excavation in roadway for the purpose of running 5 in. cast iron sewer in houses 3418, 3420 Reservoir St. N. W.

I desire to have the work done by Chas. Lockhead & Co., a registered plumber, who is authorized to obtain the necessary permit, the conditions of which I will acquaint myself with before the work is commenced.

(Signed)                      J. W. Bogley & Bro.,
                              Address 1335 Wis. Ave.,
                                  Owner of Premises.

I hereby agree to do the above-described work in accordance with the plumbing regulations of the District of Columbia.

(Signed)                      Chas. Lockhead & Co.,
                                  Registered Plumber.

Received of Chas. Lockhead & Co. $2.   Permit Fee.   To be returned if a permit is refused upon this application.

                              E. G. Davis,
                              Collector of Taxes, D. C.
(Signed)                      W. R. J., Asst. Cashier.

Engineer Department, District of Columbia.
No. 179.   Book 140.             Washington, Oct. 10, 1907.

Permission is hereby given, subject to conditions named below, to Chas. Lockhead & Co., a Registered Plumber, for J. W. Bogley & Bro., owner of premises 3318 & 20 Reservoir St., to make the necessary excavation for the purpose of connecting with sewer in roadway, said work to commence on the 10th

day of October, 1907, and be completed within five days from
that date.

The conditions of this permit are as follows:

It is required that each permit for an excavation in a public
street be taken out before the work is commenced; that it be
kept at the place of excavation while the work is being done,
and be exhibited whenever called for by the police or other
person having authority to examine the same; that no author-
ized underground construction be injured or interfered with;
that no asphalt, coal-tar, concrete, granite, or other improved
surface be disturbed, unless a deposit shall have been made to
cover the cost of repairing the same; that subject to the pro-
vision of these regulations all portions of the street excavated
be put in as good condition as before the excavation was made;
that the trench be filled up and thoroughly rammed (and pud-
dled, if required) within forty-eight hours after making the
connection or repairs, the ramming to be done in 6-inch layers;
and that all rubbish or other foreign material be removed
within the time designated for the completion of the work,
after which the permit shall become void and of no effect;
that during the execution of this work the trench be suitably
guarded during the day, and that it be thoroughly covered
and securely barricaded from sunset to sunrise, and that lighted
red lamps be so placed before dark, every night, as to prevent
accidents to persons or animals passing along the street; and
that the District of Columbia be protected and saved harmless
from the consequences of an injury to any person or property,
due to the execution of the permit issued by said District of
Columbia to any person or corporation to excavate in any
public street.

By order of the Engineer Commissioner, D. C.
(Signed)                          H. M. Woodward,
                                     Permit Clerk.   B.
Permit Fee $2.


The Bogleys employed Lockhead to install the plumbing work
in the houses, which included the excavation mentioned in the
permit.

. The evidence of the appellee, plaintiff below, tended to show that at about 3 o'clock on the afternoon of the 16th day of April, 1907, he was walking along the sidewalk in front of said houses, and paused for the purpose of noting the progress of the work; that to get a better view he stepped either a little to one side or a little backwards, and fell into the excavation, which was in the asphalt sidewalk and about 2 feet 6 inches wide, 2 feet 9 inches long, and 7 or 8 feet deep; that there was no protection whatever over or immediately around the excavation, which occupied about one third of the width of the sidewalk.

The evidence on the part of the defendants tended to show that the excavation under the permit was commenced about the 13th of April, and was completed about 11 o'clock the day of the accident; that the excavation was properly protected at night; that after the excavation was completed one laborer remained "waiting for the material to come, the piping to put in this hole;" that this laborer sometime prior to the accident, estimated by him as fifteen or twenty minutes, went "around the back, to the toilet," and did not hurry back because he was still waiting for the material and "had nothing to do;" that there was more or less earth and some concrete blocks about the hole when the accident occurred. It further appeared that the defendant Lockhead saw the hole the morning of the accident; and there was testimony that the Bogleys were on the premises almost every day. John W. Bogley was not certain whether or not he inspected the work the morning of the accident, but he did testify that he "usually dropped off the car there, and then walked down" to his place of business. There was no testimony that anyone was specifically directed to guard the hole after its completion.

The only exceptions taken relate to the refusal of the court to give certain requested instructions.

A preliminary question must be first disposed of. Appellee filed a motion in this court to dismiss the appeal herein on the ground that the bill of exceptions was not settled until after the term in which the judgment was entered had expired. It

appears that the bill was submitted to the court on February 18, 1902, two days before the expiration of the prolonged term, and therefore within the rule; and that, some discussion having arisen between counsel for the respective parties, the bill was not actually signed by the court until after the prolonged term had expired. We think there was a substantial compliance with the rule. The bill was filed within the prescribed time and signed *nunc pro tunc* by the court. Having done all they could to comply with the rule, manifestly appellants ought not to be prejudiced because the court in its discretion deferred the actual signing of the bill until after the expiration of the term. *United States* v. *Breitling,* 20 How. 252, 15 L. ed. 900.

At the close of all the evidence a peremptory instruction for all the defendants was requested, and, being refused, the defendants severally and separately excepted. Thereupon the defendants Bogley requested an instruction to the effect that Lockhead was an independent contractor while prosecuting the work which caused the injury, and that therefore they were not liable. This request was also refused, and an exception duly noted.

It was urged in the argument at bar that the plaintiff by contributory negligence defeated his right of recovery. This contention we put to one side, with the observation that in the circumstances of the case as developed by the evidence it was clearly for the jury to determine whether the plaintiff at the time he fell into the hole was exercising due care and caution; *Mosheuvel* v. *District of Columbia,* 191 U. S. 247, 48 L. ed. 170, 24 Sup. Ct. Rep. 57.

It next becomes necessary to determine whether the appellants Bogley are chargeable with the negligence of their contractor, Lockhead. The hole was dug at their instigation and for their benefit, and they knew, or should have known, that unless it was properly protected serious consequences might arise. The accident that did ensue was the direct result of the work Lockhead under his contract with them had agreed to perform. The owner of a lot for whose benefit work like this is performed must take proper precaution to prevent the creation of a nuisance. He cannot escape liability for the natural and

direct results that flow from digging a hole in a city sidewalk by hiding behind his contractor. *Robbins* v. *Chicago,* 4 Wall. 678, 18 L. ed. 432; *Cleveland* v. *King,* 132 U. S. 295, 33 L. ed. 334, 10 Sup. Ct. Rep. 90.

The evidence shows that this hole occupied about a third of the width of the sidewalk, and was 7 or 8 feet deep,—a veritable mantrap. The plaintiff's testimony tended to show, and the jury evidently found, that nothing whatever was about the hole to warn those passing of its existence. The laborer who remained after the work was completed testified that he had nothing to do, and was there because he was waiting for material. He did not testify that anyone directed him to stand guard over the hole, or protect it in any way after its completion. Nor did Lockhead or either of the Bogleys testify that they made any provision for the protection of the hole after its completion. It would have been a very simple and easy matter to have covered a hole of that size. Why was it not done? Because someone was negligent. The permit, the terms of which the Bogleys in their application agreed to acquaint themselves with, required that the trench "be suitably guarded during the day." It was not guarded or protected, and we see no escape from the conclusion that the Bogleys were as much responsible for the ensuing consequences as Lockhead, who merely did the digging.

The remaining question necessary to be considered relates to the refusal of the court to direct a verdict for the District.

Having issued the permit authorizing the hole to be dug, the District was chargeable with knowledge of the prosecution of the work, and the duty of supervision over it to the end that the safety of the public be secured. Was the District remiss in its duty? The work was commenced three days prior to the accident, and until the trench was fully dug the requirements of the permit as to protection were complied with. It therefore clearly appears that in the first instance the District was not guilty of negligence, because sufficient protection was provided to guard the public against danger. From the completion of the excavation at 11 o'clock in the forenoon of

the day plaintiff was injured until within a very short time prior to the accident, one of the men employed in digging the hole remained near it. A representative of the District, seeing this laborer near the hole he had assisted in digging, and apparently guarding it, naturally and reasonably would have inferred that he had been placed there not merely to await the coming of material to be put into the hole, but to warn the public of the existence of the hole, and thereby fulfil the conditions of the permit.

There was no evidence before the jury that the District had knowledge, either actual or constructive, of the unguarded condition of the hole at the time plaintiff fell into it. On the contrary, the circumstances as disclosed by the evidence were such as to warrant the District in believing that the conditions of its permit were continuing to be carried out. If therefore in the circumstances of this case the District is to be chargeable with liability, we must in effect impose upon it the duty of placing a representative in direct supervision over every similar work in the District. We do not so understand the law.

Dwellings being even more necessary than streets or sidewalks, permits for their erection and work incident thereto must, of course, be granted. Having issued a permit, the District must exercise reasonable care to see that its conditions are obeyed. But that does not constitute the District an insurer of the public, nor require it instantly to take notice of a failure on the part of a licensee to fulfil his obligations under the license. No hard and fast rule can be made, because each case must be determined according to the facts and circumstances surrounding it. What would be due care in one case might constitute negligence in another.

In *District of Columbia* v. *Woodbury,* 136 U. S. 450, 34 L. ed. 472, 10 Sup. Ct. Rep. 990, relied upon by appellee, the facts were different. There the hole causing the accident had been *insecurely* covered for fifteen or eighteen days prior to the accident, and there was a question whether it had ever been properly protected. It did not appear, therefore, that due care was in the first instance observed by the District. The opinion

states: "The burden is on the plaintiff to prove either that the thing was originally dangerous or had become so long enough before the accident for the authorities to have known it, so as to impose upon them the obligation to put it in proper condition."

*Cleveland* v. *King,* 132 U. S. 295, 33 L. ed. 334, 10 Sup. Ct..Rep. 90, is more in point. That was an action to recover damages for personal injuries sustained in consequence of an alleged failure of the city of Cleveland to exercise due care in keeping one of its streets in safe condition for public use. A permit had been issued authorizing the obstruction for building purposes of not more than one half of a certain street. The declaration alleged that the parties to whom the permit issued obstructed more than one half of the street, and suffered the obstruction to remain during one day and during the night-time of that day, unprotected and unguarded, and that by reason of such negligence the plaintiff, while passing along the said street in the nighttime in a buggy, collided with said obstruction and was seriously injured. The court said: "The fact that the permits to Rosenfeld and Kostering only authorized them to occupy one half of the street for the purpose of depositing building materials thereon, and required them to indicate the locality of such materials by proper lights during the whole of every night that they were left in the street, did not relieve the city of the duty of exercising such reasonable diligence as the circumstances required to prevent the street from being occupied by those parties in such a way as to endanger passersby in their use of it in all proper ways." See also *Washington Gaslight Co.* v. *District of Columbia,* 161 U. S. 316, 40 L. ed. 712, 16 Sup. Ct. Rep. 564.

In the present case the District having fulfilled its duty in the first instance, we do not think there was any evidence before the jury tending to show negligence on the part of the other defendants for a sufficient length of time before the accident to impute knowledge of such negligence to the District. This is equivalent to saying that there is not sufficient evidence in the record to support a judgment against the District, and

that, therefore, its prayer for a directed verdict should have been granted.

The judgment will be affirmed, with costs, against the appellants Bogley, and reversed, with costs to the District of Columbia, and cause remanded for further proceedings not inconsistent with this opinion.

*Affirmed in part and reversed in part.*